1

2                                                           **E-Filed 6/23/09**

3

4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                          SAN JOSE DIVISION

11  VERIZON CALIFORNIA INC., et al.,          Case Number C 08-2832 JF (RS)

12                      Plaintiffs,           ORDER[1] RE MOTION FOR
                                              RECONSIDERATION OF DENIAL
13          v.                                OF CONTEMPT SANCTIONS

14  ONLINENIC INC., et al.,                   [re:  doc. no. 30]

15                      Defendants.

16

17

18          In this action for alleged cybersquatting by Defendant OnlineNIC, Inc. ("OnlineNIC"),

19  Plaintiffs Verizon California Inc., Verizon Trademark Services LLC, and Verizon Licensing

20  Company (collectively, "Verizon ") move for reconsideration of the Court's denial of their

21  motion to sanction OnlineNIC for violating the provisions of an injunction entered on March 11,

22  2009 in connection with an earlier default judgment.  Verizon claims that newly discovered

23  evidence demonstrates that OnlineNIC induced the transfer of thousands of domain names in

24  contravention of the injunction.  OnlineNIC acknowledges that the subject transfers occurred but

25  denies having induced them.  As explained below, the Court now finds by clear and convincing

26  evidence that OnlineNIC did induce and authorize the transfers in contravention of the

27  _____

28          [1] This disposition is not designated for publication in the official reports.

gt;

injunction, and it concludes that sanctions are warranted.

## I. BACKGROUND

Verizon and its various affiliates are owners or licensees of numerous Verizon-related trade names and trademarks. On June 6, 2008, Verizon filed a complaint against OnlineNIC for violations of the Anticybersquatting Consumer Protection Act ("ACPA"), trademark infringement and dilution, false designation of origin, and unfair competition. The complaint alleged that OnlineNIC was engaged in extensive cybersquatting, registering hundreds of thousands of domain names that are confusingly similar to famous trademarks and service marks. A cybersquatter receives advertising revenue when internet users accidently mistype a URL and visit the cybersquatter's website rather than the intended website.

After Verizon filed its complaint, it was unable to locate any person competent to receive service of process on behalf of OnlineNIC, and the Court accordingly authorized statewide service via the California Secretary of State. When OnlineNIC still did not appear in the litigation, the clerk of the Court entered a default on December 12, 2008. Verizon moved for a default judgment, which this Court granted on December 19, 2008 in the amount of $33.15 million. To prevent the dissipation of any of OnlineNIC's assets that properly might be subject to collection by Verizon, the Court later enjoined OnlineNIC and any "parent corporations, subsidiary corporations, affiliated companies, and all other persons, firms or entities acting in concert or participating with them, directly or indirectly" from, inter alia, "transferring, releasing, deleting, or assigning any domain names," except where the transfer is made (1) in the ordinary course of business, (2) in good faith, and (3) without the effect of "depriv[ing] Plaintiffs of their ability to satisfy their judgment." Injunction, at 2.

On March 13, 2009, Verizon moved for an order of contempt, requesting that the Court sanction OnlineNIC for transferring numerous domain names in violation of the injunction. The Court denied the request for contempt sanctions in an oral ruling, finding insufficient evidence that the injunction had been violated. Verizon now renews its request for sanctions on the basis of additional evidence purportedly demonstrating that OnlineNIC, under its Chinese trade name China Channel ("China Channel"), instructed its customers to transfer their domain registrations

1    to OnlineNIC's parent company, 35 Technology Ltd. ("35 Technology"),[2] and then approved the

2    transfers.  The instructions were sent out by China Channel in late December 2008 or early

3    January 2009 and read as follows:

> For the sake of your convenience of domain name management, and also for us to
> more directly provide excellent post-sale service to you, if the domain name
> registrar embodied in our company for a CNO type domain name (including
> .com/.net/.org) that you hold is not 35 TECHNOLOGY LTD., it is suggested that
> you handle the procedure of renewal of your domain name and transfer of the
> registrar within 3 days.  Failure to handle said procedure in a timely manner may
> bring about much inconvenience to management, and will also affect the excellent
> service provided to you by China-Channel.

## II. DISCUSSION

**A.    Discovery of facts / exercise of reasonable diligence**

OnlineNIC argues that regardless of whether it induced or approved the sale of domain

names in violation of the injunction, the evidence cited by Verizon is not "new," in the sense that

it should have been discovered earlier in the exercise of reasonable diligence.  The evidence

consists of Chinese-language newspaper articles discussing commercial reactions by OnlineNIC

and its customers to the large default judgment entered by this Court.  OnlineNIC notes, and

Verizon does not dispute, that all of the evidence cited in support of the motion for contempt was

in the public domain prior to the date of the hearing on that motion.  OnlineNIC argues that this

fact alone requires denial of the instant motion, and it is true that pursuant to this Court's local

rules, reconsideration may be sought on the basis of newly discovered facts only where the

moving party, "*in the exercise of reasonable diligence*[,] . . . did not know such fact[s] or law at

the time of the interlocutory order."[3]  Civil Local Rule 7-9(b)(1) (emphasis added).

Verizon argues that it first became aware of OnlineNIC's alleged violation of the

injunction on February 13, 2009, at which point it promptly filed its motion for contempt.  As

---

[2] Verizon has provided evidence indicating that 35 Technology is the owner of the
OnlineNIC/China Channel; OnlineNIC does not deny the accuracy of this characterization.

[3] OnlineNIC improperly bases its argument on Fed. R. Civ. P. 60(b)(2), which provides a
list of permissible grounds upon which a Court may grant relief from a "final judgment, order, or
proceeding."  Although the Court's denial of contempt sanctions followed the entry of judgment,
the subject order was entered "without prejudice" and therefore clearly was interlocutory in
nature.  It therefore is governed by Civil Local Rule 7-9.

Case No. C 08-2832 JF (RS)
ORDER RE MOTION FOR RECONSIDERATION OF DENIAL OF CONTEMPT SANCTIONS
(JFLC3)

1   noted, the source of Verizon's information was a series of online news articles published in

2   Chinese, which Verizon previously had not translated.  Verizon argues that in light of the

3   expedited basis on which the motion for contempt was heard, it should not be expected to have

4   discovered the materials any earlier than it did.  The Court agrees.  Verizon moved swiftly to

5   prevent the transfer of further assets, and OnlineNIC has not explained how it would be

6   reasonable to expect Verizon to have translated every extant foreign language document prior to

7   the filing of its original motion.  Accordingly, the Court turns to the issue of whether the

8   evidence supports the imposition of sanctions.

9   **B.      Transfer of domain names**

10          OnlineNIC acknowledges that between February 27, 2009 and March 13, 2009, 6,083

11  domain names were transferred from OnlineNIC to 35 Technology.  It argues, however, that the

12  vast majority of the domain names were "registered through China-Channel," and that the

13  transfers were made independently by OnlineNIC's customers in the ordinary course of

14  business–presumably as a consequence of negative publicity surrounding the $33 million default

15  judgment.  OnlineNIC contends that "unless . . . Verizon can show that the purpose of the

16  transfer[s] was to, in the words of the Injunction, 'deprive Plaintiffs' [sic] the ability to satisfy

17  their judgment,' there can have been no violation of the injunction."  There are multiple

18  problems with OnlineNIC's reasoning.

19          First, OnlineNIC nowhere expressly denies Verizon's documented assertion that China-

20  Channel and OnlineNIC are the same entity.  Indeed, beyond the multitude of online search

21  results for the query "OnlineNIC dba China Channel," OnlineNIC's own domain name

22  registration agreement requires users to browse regularly China Channel's website to discover

23  "the update [sic] version of *this* agreement."  Second, the injunction may be violated not only

24  where the purpose of domain name transfers is to interfere with Verizon's ability to satisfy its

25  judgment, but where the transfers have that effect.  There is no question that the subject transfers

26  did have that effect.  Moreover, while OnlineNIC argues that the injunction limits potential

27  violations to those transfers that were not made in "good faith"–i.e., that were made in bad

28  faith–the "bad faith" requirement applies only where the transfers were made in the ordinary

4

1    course of business. It strains credulity to say that notices instructing customers to take their

2    business to other companies were sent in the "ordinary course of business." Thus, the "bad faith"

3    limitation does not apply.

4            OnlineNIC also observes that the most recent set of transfer instructions cited by Verizon

5    as evidence of inducement to transfer domain names was issued in December 2008,

6    approximately two months *before* the issuance of the injunction. But this fact does not materially

7    alter the analysis. In light of the fact that at least 67% of the domain names transferred away

8    from OnlineNIC after late December were directed to 35 Technology, OnlineNIC cannot credibly

9    claim that it was unaware of the ongoing effect of the instructions, even if transmission of the

10    instructions did cease in December 2008.[4] Despite that awareness, OnlineNIC approved each of

11    the thousands of transfers to 35 Technology and others. That conduct constitutes a willful

12    violation of the injunction.[5]

### III. ORDER

14            Consistent with the foregoing discussion, the Court will impose sanctions on OnlineNIC.

15    However, in determining the appropriate amount of sanctions, it must be noted that OnlineNIC

16    volunteered at the initial hearing on Verizon's emergency motion for contempt to "undo" all of

17    the transfers occurring after the issuance of the injunction, and the Court ordered that OnlineNIC

18    do so. At oral argument on the instant motion, there appeared to be some disagreement as to

19

20            [4] In fact, OnlineNIC does not argue that it removed or retracted the notices, or that it
21    ceased sending them after December 2008.

22            [5] At oral argument, counsel for OnlineNIC suggested that Verizon's opening
      papers–which did not state specifically the date of the communications offered to prove
23    OnlineNIC's violation of the injunction–were so incomplete as to render the imposition of any
      sanctions on the basis of the motion a violation of OnlineNIC's due process rights. While
24    Verizon's opening brief in support of its motion was not a model of clarity, it states
      unambiguously as the basis for sanctions that "OnlineNIC instructed its customers to transfer
25    their domain names to 35 Technology, and that 35 Technology and OnlineNIC continued to
      process these transfers well after the Injunction was entered by the Court." Motion for Sanctions,
26    at 3:3-5. That is the argument that Verizon has made consistently throughout its briefing, and
      which the Court accepts. Thus, OnlineNIC's "due process . . . rights to notice and a hearing
27    [were] respected." *Little v. Kern County Superior Court*, 294 F.3d 1075, 1080 (9th Cir. 2002)
28    (quoting *United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 832 (1994)).

1   whether full compliance had been achieved, and Verizon since has stated that no domain names

2   have been returned to OnlineNIC. For the limited purpose of deciding the instant motion,

3   however, the Court will give OnlineNIC the benefit of the doubt with respect its attempt to fulfill

4   its promise. While OnlineNIC's voluntary effort does not lessen the wrongfulness of its conduct

5   in authorizing the transfer of domain names in the first instance, it does warrant the imposition of

6   less severe sanctions. The amount of the sanctions will be $10,000. Each side will bear its own

7   costs and fees incurred in connection with the motion for contempt and subsequent related

8   motions, not including Verizon's recently filed Motion for Order to Show Cause re Contempt.[6]

9

10  **IT IS SO ORDERED**.

11

12  DATED: 6/23/09

13                                                  _____

14                                                  JEREMY FOGEL
                                                    United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26  _____

27       [6] While the Court initially contemplated requiring OnlineNIC to pay, as a sanction, the
    attorneys' fees and costs that Verizon incurred in connection with the instant motion, it became
28  clear at oral argument that such fees and costs far exceed the amount of the sanction that the
    Court is willing to impose under the circumstances.

Case No. C 08-2832 JF (RS)
ORDER RE MOTION FOR RECONSIDERATION OF DENIAL OF CONTEMPT SANCTIONS
(JFLC3)

This Order has been served upon the following persons:

David Jefferson Steele david.steele@cph.com, djslit@cph.com

Gary Scott Dukarich gsd@cph.com, kristen.geraci@cph.com

Howard Alan Kroll howard.kroll@cph.com, susan.lovelace@cph.com

Perry J. Narancic pnarancic@nk-pc.com

Sarah B. Deutsch sarah.b.deutsch@verizon.com

Scott R. Mosko scott.mosko@finnegan.com

Case No. C 08-2832 JF (RS)
ORDER RE MOTION FOR RECONSIDERATION OF DENIAL OF CONTEMPT SANCTIONS
(JFLC3)