**E-Filed 7/27/09**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| VERIZON CALIFORNIA INC., et al.,<br><br>                         Plaintiffs,<br><br>          v.<br><br>ONLINENIC, INC.,<br><br>                         Defendant. | Case Number C 08-2832 JF (RS)<br><br>**ORDER[1] GRANTING IN PART AND DENYING IN PART MOTIONS FOR CONTEMPT SANCTIONS AND FOR RELIEF FROM JUDGMENT**<br><br>[re:  doc. nos. 60 & 113] |

        Plaintiffs Verizon California, Inc., Verizon Trademark Services LLC, and Verizon

Licensing Company (collectively, "Verizon") move for the imposition of civil contempt

sanctions against Defendant OnlineNIC, Inc. ("OnlineNIC") for its alleged violations of the

Modified Injunction and Receiver Order entered by this Court on May 13, 2009.[2]  Verizon

---

        [1] This disposition is not designated for publication in the official reports.

        [2] Verizon filed its first motion for contempt on March 13, 2009, arguing that OnlineNIC had violated the terms of an injunction entered by the Court on March 11, 2009.  The Court held a hearing on the motion on March 23, 2009, and denied the request for sanctions in an oral ruling.  On April 8, 2009, Verizon moved for reconsideration of the denial of contempt sanctions, citing new evidence of OnlineNIC's alleged violations of the Court's initial injunction.  Verizon

1  alleges eleven counts of contempt, on the basis of which it seeks monetary sanctions and

2  recovery of its reasonable attorneys' fees and costs.  In addition, noting that the Court for the last

3  five months has held OnlineNIC's motion for relief from judgment under submission for the

4  express purpose of evaluating OnlineNIC's general credibility and its intent to engage with the

5  litigation process, Verizon now asks the Court to deny the motion for relief from judgment.

6       Having undertaken a careful review of the record, the Court finds that OnlineNIC has

7  committed multiple sanctionable violations of the Court's orders.  In addition, after evaluating

8  not only the arguments presented in connection with OnlineNIC's motion for relief from

9  judgment, but the subsequent course of this litigation, the Court has determined that there is no

10  basis for setting aside the default judgment.  However, because it is beyond dispute that

11  OnlineNIC, albeit belatedly and at times in bad faith, has sought to participate in this litigation,

12  the Court will require Verizon to prove up its damages in the context of the present adversarial

13  proceedings, and will modify the judgment accordingly.

## I. MOTION FOR CONTEMPT SANCTIONS

**A.    Allegations**

16       Verizon claims that OnlineNIC is guilty of the following violations of the Modified

17  Injunction:

18       1. Failure to provide a copy of the Modified Injunction to ICANN by May 14, 2009

19       2. Failure to provide a copy of the Modified Injunction to VeriSign by May 14, 2009

20  ─────────────────────

21  renoticed the motion on May 8, 2009, a hearing on the motion was held on June 12, 2009, and
    the Court granted Verizon's request for sanctions on June 23, 2009.

22       On June 17, 2009, Verizon filed a second motion for contempt, arguing that OnlineNIC
    had violated the terms of the Modified Injunction and the Receiver Order.  A hearing on that

23  motion was held on July 6, 2009.  As the Court noted at the hearing, Verizon's moving papers
    lacked a clear structure and contained stray accusations of wrongdoing that did not appear to

24  constitute violations of the Modified Injunction or the Receiver Order.  The Court noted that in

25  the context of a motion for civil contempt, this lack of clarity at a minimum raised questions with
    respect to OnlineNIC's due process rights.  Compounding the general disorder was OnlineNIC's

26  untimely filing of its opposition.  Under the circumstances, the Court instructed the parties to re-
    brief the contempt issue.  Verizon then filed the present set of papers, which is clear and concise,

27  and which informs OnlineNIC in plain terms of the provisions of the Court's orders it is alleged

28  to have violated.

Case No. C 08-2832 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR CONTEMPT SANCTIONS AND FOR
RELIEF FROM JUDGMENT
(JFLC3)

1       3. Transfer of approximately 250 domain names as to which pending transfer requests had

2        been rejected by Verizon

3       4. Transfer of twenty-nine domain names as to which no transfer request ever was sent to

4        Verizon

5       5. Failure to submit "whois" data for at least 122 domain name transfer requests

6       6. Failure timely to report transfer requests to Verizon

7       7. Submission of sworn certificates regarding the identity of various registrants, when in

8        fact OnlineNIC had no knowledge of their identity

9       8. Cancellation of domain name transfers approved by Verizon

10      Verizon claims that OnlineNIC also is guilty of the following violations of the Receiver

11 Order:

12       9. Failure to produce documents to Verizon in their native electronic format

13       10. Failure timely to produce other documents whose production was ordered by the

14        Court

15       11. Failure to produce the daily transfer logs for all of the domain names transferred from

16        OnlineNIC to other registrants between August 1, 2008 and March 14, 2009.

17 **B.**    **Legal standard for civil contempt**

18       To hold a party in contempt, a court must find by clear and convincing evidence that the

19 party violated a specific and definite order and that it had sufficient notice of its terms and the

20 fact that it would be sanctioned if it did not comply. *See In re Dyer*, 322 F.3d 1178, 1190-91 (9th

21 Cir. 2003) ("The standard for finding a party in civil contempt is well settled: The moving party

22 has the burden of showing by clear and convincing evidence that the contemnors violated a

23 specific and definite order of the court."). "In civil contempt proceedings[,] the contempt need

24 not be willful." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).

25 **C.**    **Discussion**

26       **1. Submission of Modified Injunction to ICANN**

27       In order to undo a series of apparently improper domain name transfers from OnlineNIC

28 to its parent 35 Technology LTD, the Modified Injunction contained the following requirement:

1  "[W]ithin one day of entry of this Modified Injunction, OnlineNIC shall submit this Modified

2  Injunction to ICANN and request that all such transfers be undone in accordance with Section 6

3  of the ICANN Policy on Transfer of Registrations between Registrars." Modified Injunction, at

4  4:7-10. Because the Modified Injunction was entered on May 13, 2009, OnlineNIC was required

5  to submit the Modified Injunction to ICANN by May 14, 2009. However, it is undisputed that

6  OnlineNIC did not do so until June 22, 2009.[3] OnlineNIC now argues that its failure timely to

7  submit the Modified Injunction to ICANN should be excused because compliance with the

8  Modified Injunction in effect would have been futile. Specifically, OnlineNIC points out that

9  ICANN has no power to transfer domain names, a task that may be accomplished only with the

10  aid of a registry operator such as VeriSign.

11       OnlineNIC's "excuse" is problematic for several reasons. First, a party may not disregard

12  the clear terms of a court order, even if that party believes the order to be misguided, mistaken, or

13  otherwise incorrect. *See, e.g.*, *Chapman v. Pac. Tel. & Tel. Co.*, 613 F.2d 193, 197 (9th Cir.

14  1979) ("An attorney who believes a court order is erroneous is not relieved of the duty to obey

15  it."); *Nasco, Inc. v. Calcasieu Television & Radio, Inc.*, 583 F. Supp. 115, 121 (W.D. La. 1984)

16  (noting that an "[o]rder must be obeyed and cannot be ignored unless it is withdrawn or

17  vacated"). Thus, OnlineNIC was not at liberty to disregard the express terms of the Modified

18  Injunction, even if compliance with those terms would not have resulted in the desired domain

19  name transfers.[4]

20       Second, while the Court would be well inclined to forgive OnlineNIC's failure to comply

21  with an apparently pointless requirement if there were clear evidence that OnlineNIC instead

22  diligently attempted to achieve meaningful compliance, the record does not indicate clearly that

23

24  _____

25       [3] Perhaps not coincidentally, that date coincided with the deadline for OnlineNIC's
    opposition to Verizon's motion for contempt, which was based, inter alia, on OnlineNIC's failure
26  to submit the Modified Injunction to ICANN.

27       [4] OnlineNIC's claim that compliance with the terms of the Modified Injunction was
    impossible–and its silence and inaction in the face of that purported impossibility–is particularly
28  odd given that OnlineNIC proposed the subject provision of the injunction.

Case No. C 08-2832 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR CONTEMPT SANCTIONS AND FOR
RELIEF FROM JUDGMENT
(JFLC3)

1  OnlineNIC acted with such diligence.  OnlineNIC submitted the Modified Injunction to VeriSign

2  on May 18, 2009.  However, despite VeriSign's belief–conveyed in a letter to defense counsel on

3  June 11, 2009–that the Modified Injunction did not require the transfer of any domain names,[5]

4  defense counsel took no further action until July 1, 2009.

5       Despite its difficulty in accepting OnlineNIC's conduct, the Court will give OnlineNIC

6  the benefit of the doubt with respect to whether OnlineNIC diligently attempted to achieve

7  meaningful compliance with the Modified Injunction.  Counsel for OnlineNIC claims that he did

8  not receive VeriSign's letter until early July because he was out of the country.  *See* Second

9  Narancic Decl., Ex. A.  While compliance with the Court's orders was not to be solely at

10  counsel's pleasure or convenience, VeriSign did send the letter by conventional mail, apparently

11  without providing any other form of notification, and counsel's delay is in some measure

12  attributable to the relative inefficiency and inherent limitations of paper-based communication.

13  Because there is *some* evidence that OnlineNIC did attempt to comply with the underlying

14  purpose of the Court's order in a meaningful way, no sanctions will be imposed for this violation.

15  **2. Failure to submit the Modified Injunction or other transfer instructions to**

16     **VeriSign**

17       As already noted, the Modified Injunction states that "within one day of entry of this

18  Modified Injunction, OnlineNIC shall submit this Modified Injunction to ICANN and request

19  that all such transfers be undone in accordance with Section 6 of the ICANN Policy on Transfer

20  of Registrations between Registrars."  Modified Injunction, at 4:7-10.  To undo a transfer,

21  Section 6 of ICANN's Policy requires that the relevant registry operator–here, VeriSign–be

22  provided with a copy of a court order undoing a domain name transfer.  Verizon reads the

23  injunction as containing a requirement that OnlineNIC submit the Modified Injunction to

24  VeriSign by May 14, 2009, which OnlineNIC did not do.

25

26     [5] VeriSign informed counsel that it was "in receipt of [his] letter dated May 18, 2009[,] . .

27  . [and] ha[d] reviewed the Modified Injunction dated May 13, 2009[,] . . . [but that] [it] d[id] not appear that VeriSign [was] directed to take any action at this time."  Second Supp. Steele Decl., ¶

28  3 & Ex. 2.  VeriSign directed counsel to "let [VeriSign] know" if he disagreed.  *Id*.

5

1    On its face, the Modified Injunction makes no reference to VeriSign, and there is some

2    ambiguity as to whether it contains a deadline for submission to the relevant registry operator(s).

3    Specifically, while the Modified Injunction requires that it be submitted in copy to *ICANN* within

4    one day of its issuance, it is not clear whether the related "request that all . . . transfers be

5    undone" also must be made to the *registry operator* within one day of issuance of the Modified

6    Injunction.  To be sure, a reading that provided OnlineNIC with an open-ended mandate to

7    follow the procedures of Section 6 at its leisure would be contrary to the express purposes of the

8    injunction.  Nonetheless, because there is ambiguity–however slight–in the language of the

9    injunction, the Court will not sanction OnlineNIC for its apparent four-day delay in submitting

10   the Modified Injunction to VeriSign.[6]

11              **3. Transfer of domain names rejected by Verizon**

12   The Modified Injunction provides that "OnlineNIC shall not transfer, release, delete or

13   assign any domain name without the prior written approval of Verizon or the Court-appointed

14   Receiver."  Modified Injunction, at 2:22-24.  Verizon claims that OnlineNIC authorized the

15   transfer of nearly 250 domain names despite Verizon's express rejection of OnlineNIC's transfer

16   requests.  OnlineNIC initially claimed that the subject transfers were the result of

17   unintentional–and therefore excusable–error.  It noted that the transfers occurred during the

18   "early period of the Modified Injunction, when the transfer protocols were still being 'ironed

19   out.'"  First Opp., at 5:2-4.  As Verizon points out, however, the subject transfers occurred

20   between May 31 and June 18–i.e., between eighteen and thirty-six days after the Modified

21   Injunction was issued–and OnlineNIC cannot credibly claim that its transfer protocol still was

22   being "ironed out" at that time.  Relatedly, while OnlineNIC claims that any inference of bad

23   faith is negated by the alleged fact that it voluntarily notified Verizon of the improper transfers,

24   the record reflects that OnlineNIC notified Verizon of only seven of the subject transfers, and

25

26

27   [6] The fact that the Modified Injunction *requires* that it be submitted in copy to registry

28   operators like VeriSign does not undermine the significance, in the context of the first count of
     contempt, of counsel's apparent attempt to achieve meaningful compliance.

1   that the rest were accomplished "surreptitiously," as Verizon claims. *See* First Narancic Decl.,

2   Ex. G.

3          In its opposition to Verizon's renewed motion for contempt sanctions, OnlineNIC now

4   argues that Verizon's charge simply is false. The basis for this argument is unclear, resting as it

5   does solely on defense counsel's assertion that the relevant allegation "is false," and his citation,

6   without explanation, to a 183-page spreadsheet. In any event, the evidence does not support

7   OnlineNIC's position. As an initial matter, OnlineNIC provides no written explanation of the

8   meaning of the spreadsheet or the manner in which it was prepared. In addition, the spreadsheet

9   itself discloses that at least eleven domain names whose transfer was rejected by Verizon were

10  transferred by OnlineNIC. *See* Kroll Decl., ¶ 3 & Ex. 1. Finally, the spreadsheet appears to

11  contain false information. For example, it does not reflect the fact that Verizon rejected all of the

12  domain name transfer requests with initiation dates of May 28, May 29, May 30, June 4, and

13  June 12, 2009. *See* Kroll Decl., Ex. 2 (attaching emails rejecting transfer requests with the

14  foregoing initiation dates).

15         The spreadsheet, with its inaccuracies and lack of foundation, fails to rebut the clear

16  evidence of contempt submitted by Verizon. *See* ¶¶ 9-13, 16-50 & Exs. 6-10, 13-47. The Court

17  accordingly finds by clear and convincing evidence that OnlineNIC violated the Modified

18  Injunction, and it will sanction OnlineNIC in the amount of $5,000.

19         **4. Transfer of twenty-nine domain names as to which no transfer request was sent to**

20         **Verizon**

21         The Modified Injunction requires that OnlineNIC provide to Verizon within twenty-four

22  hours of receipt "the registry transfer request for each proposed domain name transfer."

23  Modified Injunction, at 2:25-27. In addition, as noted above, the Modified Injunction further

24  prohibits OnlineNIC from transferring any domain name identified in a pending transfer request

25  unless Verizon has provided its written consent to the proposed transfer. Modified Injunction, at

26  2:22-24. Verizon claims that OnlineNIC violated the Modified Injunction by transferring twenty-

27  nine domain names that it never sent to Verizon for review. *See* Steele Decl., ¶ 51 & Ex. 48.

28

7

1    OnlineNIC apparently acknowledges this fact, but characterizes the unauthorized transfers as "a

2    small number of errors."  Second Opp., at 3:24-25.[7]

3          Were OnlineNIC guilty of only twenty-nine "errors," the Court might be able to overlook

4    OnlineNIC's noncompliance.  However, because the "errors" form part of a much larger pattern

5    of noncompliance, *see generally supra* and *infra*, OnlineNIC's failure to abide by the commands

6    of the Modified Injunction may not be excused.  OnlineNIC will be fined $500 for this violation

7    of the Modified Injunction.

8          **5. Failure to submit "whois" data for approximately 122 domain name transfer**

9          **requests**

10         OnlineNIC acknowledges is failure to submit "whois" data for approximately 122 domain

11   name transfer requests, but argues that this failure should be excused because "the data was [sic]

12   missing from OnlineNIC's information technology systems due to technical problems–which is

13   common in any large-scale database deployment."  First Opp., at 5:16-19.

14         As an initial matter, OnlineNIC has provided no competent evidence–for example, in the

15   form of a declaration–in support of its contention that the relevant "whois" data were missing

16   from its database.  More importantly, it is apparent that the data were not missing from

17   OnlineNIC's database with respect to at least eighty-six domain names for which the registrant

18   was identified as "lenawoo."  The record reflects that OnlineNIC has attempted on several

19   occasions to transfer the eighty-six "lenawoo" domain names, despite the fact that "lenawoo"

20   appears to be an alias of OnlineNIC.  Verizon twice rejected the transfer requests for these

21   domain names, and the Receiver, on appeal, upheld Verizon's determination.  *See* Steele Dec., ¶¶

22   54-57 & Exs. 49-52.  On June 3, 2009, OnlineNIC again requested authorization to transfer the

23   "lenawoo" domain names.  In that instance, although VeriSign's Registry Transfer Logs–which

24   OnlineNIC directly imports and provides to Verizon–listed whois data for the eighty-six domain

25

26          [7] Although this acknowledgment directly contradicts a representation in the Declaration
27   of Mr. Liu, who claimed that OnlineNIC *had* NACKed all of the subject transfers, *see* Liu Decl.,
     Doc. No. 121, ¶ 3, OnlineNIC does nothing attempt to explain or excuse the apparent falsity of
28   the relevant statements in the Liu declaration.

8

names, OnlineNIC's two spreadsheets did not. *See* Steele Dec., ¶¶ 58 & Ex. 53. Under these circumstances, the only logical conclusion is that OnlineNIC intentionally omitted the "whois" data for the "lenawoo" domain names. At least as to the eighty-six "lenawoo"-registered domain names, the Court finds by clear and convincing evidence that OnlineNIC intentionally withheld "whois" data in violation of the Modified Injunction. OnlineNIC will be sanctioned $5,000 for this violation.

### 6. Failure timely to submit transfer requests to Verizon

The Modified Injunction requires that OnlineNIC submit to Verizon the registry transfer request for each proposed domain name transfer, along with the "whois" data for the registrant of each proposed domain name transfer and sworn certificates from an officer of OnlineNIC regarding the registrant and the gaining registrar (i.e., the transferee or recipient of the domain name). Modified Injunction, at 2-3. Verizon claims that OnlineNIC has violated the Modified Injunction by failing, on "at least 12" occasions, to submit the required information within twenty-four hours of receiving it, as required. *See* Steele Dec., ¶ 63 & Ex. 57.

OnlineNIC admits that it failed timely to provide the subject information, but argues that its failure should be excused because the twenty-four hour period "is simply too short." In light of the fact that OnlineNIC itself proposed the twenty-four hour period, its mere belief that the period is "too short"–and its failure to notify the Court of its purported difficulties until Verizon sought contempt sanctions–is not an adequate excuse. However, because the violation appears not to have prejudiced Verizon, OnlineNIC will be sanctioned only $100 for this violation of the Modified Injunction.

More serious is OnlineNIC's failure, between May 14 and July 2, 2009, to provide Verizon with the registry transfer requests from the registry operators of .org, .biz, .info, .us, and .in domain names. OnlineNIC argues that it should be excused for its failure to provide the registry transfer requests because "Verizon never inquired about non.com domain [sic] until the very end of June." Second Opp., at 4:2-3. However, Verizon's failure to "inquire" about the transfer requests did not relieve OnlineNIC of its duty to comply with the Modified Injunction. OnlineNIC will be sanctioned $5,000 for this violation of the Court's order.

9

1

**7. Submission by OnlineNIC of sworn certificates regarding the identity of**

2

**registrants when OnlineNIC apparently was ignorant of the registrants' identity**

3

The Modified Injunction requires that OnlineNIC submit certifications under penalty of

4 perjury attesting that (1) OnlineNIC is not affiliated or acting in concert with the registrant of the

5 domain name whose transfer is sought, and (2) OnlineNIC has not communicated with that

6 registrant in connection with the transfer. Modified Injunction, at 3:6-13. Verizon claims that

7 OnlineNIC violated the Modified Injunction by submitting certifications under penalty of perjury

8 for at least 286 domain name transfer requests as to which OnlineNIC had no identity data in its

9 own database. Motion for Contempt at 15:12-18 (citing Steele Dec., ¶¶ 61-62 & Exs. 55-56).

10

As questionable as OnlineNIC's conduct may be, Verizon does not claim that any of

11 OnlineNIC's certificates actually were false. Rather, Verizon claims at most that the submission

12 of certificates with respect to unknown registrants is "another instance where OnlineNIC's sworn

13 statements are suspect." Motion for Sanctions, at 15:21-22. While the Court agrees, Verizon has

14 not demonstrated that OnlineNIC violated the Modified Injunction.

15

**8. Cancellation of domain name transfers approved by Verizon**

16

Verizon claims that OnlineNIC has violated the Modified Injunction by cancelling

17 thousands of domain transfers that Verizon actually approved. OnlineNIC provides a series of

18 unconvincing excuses for its admitted failure to execute the transfers following Verizon's

19 approval, and the Court agrees with Verizon that OnlineNIC's conduct was inappropriate.

20 However, because the Modified Injunction lacks any express requirement that OnlineNIC

21 execute transfers that Verizon has approved, the Court discerns no sanctionable violation of the

22 Modified Injunction.

23

**9. Failure to produce documents in their native electronic format**

24

The Receiver Order required OnlineNIC to provide certain documents in their native

25 electronic format to Verizon and the Receiver by May 27, 2009. Receiver Order, at 1:24-26.

26 Verizon claims that OnlineNIC has not produced any document in its native format, but has

27 exported data in a selective manner. OnlineNIC does not address this claimed violation in its

28 second opposition. In its first opposition, OnlineNIC did claim that "the fields of data that are

10

1  claimed to be missing are irrelevant to the Modified Injunction."  First Opp., at 7 n.2.  That

2  excuse is woefully inadequate.

3       As an initial matter, the production of the subject records in their native electronic format

4  is required by the *Receiver Order*, not the Modified Injunction.  Moreover, the omitted data

5  include a so-called "customer level" field, which appears to relate to OnlineNIC's relationships

6  with its customers.  That information would seem to be highly relevant to Verizon's

7  determination with respect to the propriety of domain name transfers.  More importantly, the

8  Receiver Order expressly requires that all records be submitted in their native electronic format.

9  OnlineNIC's purported adherence to its own unilaterally defined standard of "substantial

10  compliance" is no substitute for compliance with the express terms of the Court's orders.  The

11  Court finds by clear and convincing evidence that OnlineNIC violated the Receiver Order by

12  producing a selective subset of data.  OnlineNIC will be sanctioned $5,000 for this violation.

13  **10. Failure timely to produce documents whose production was ordered by the**

14  **Court**

15       Pursuant to the Receiver Order, OnlineNIC had until May 27, 2009 to produce the

16  following categories of documents to Verizon and the Receiver: (1) "written communication

17  between OnlineNIC . . . and the registrant or account holder relating to any request to transfer

18  [domain names]," Receiver Order, at 2, ¶ 6; and (2) the "account data maintained by OnlineNIC

19  for each OnlineNIC account from which a Transferred Domain was transferred," Receiver Order,

20  at 2, ¶4.  It is undisputed that OnlineNIC did not produce the subject documents until July 9,

21  2009, more than six weeks after the Court-ordered deadline.  *See* Steele Dec., ¶ 70.  Moreover,

22  OnlineNIC has failed to provide any excuse for its failure to produce the documents.  The Court

23  finds by clear and convincing evidence that OnlineNIC violated the Receiver Order in this

24  regard, and it concludes that a sanction in the amount of $5,000 is warranted.

25  **11. Failure to produce daily transfer logs for all domain names transferred from**

26  **OnlineNIC to other registrants between August 1, 2008 and March 14, 2009**

27       The Receiver Order provided that not later than May 27, 2009, OnlineNIC was required

28  to produce to Verizon and the Receiver "the daily transfer logs from any registry operator for

11

1   each domain name transferred from OnlineNIC to any other registrar from August 1, 2008 to

2   March 14, 2009."  Receiver Order, at 1:24-2:2.  Verizon claims that OnlineNIC violated the

3   Receiver Order by failing to produce the daily transfer logs from the registry operators of .org,

4   .biz, .info, .us and .mobi domain names.  OnlineNIC does not dispute its failure to comply with

5   this aspect of the Receiver Order, but claims that it never had "the hardware, software and other

6   infrastructure necessary to obtain the native transfer logs from registry operators other than

7   VeriSign."  Liu Dec., ¶ 2.  Noting that VeriSign's registry is limited to .com and .net domain

8   names, OnlineNIC claims that it thus was unable to obtain the native transfer logs for domain

9   names other than .com and .net.

10          In response, Verizon has provided the declaration of Christopher Cowherd, who is Vice

11   President of Research at an ICANN-certified registrar of top-level domains such as .com, .net,

12   .org, .mobi, .info, and .biz, and who states explicitly that

13          [i]f a registrar has the hardware, software, and infrastructure necessary to obtain
            the daily transfer log files from VeriSign, . . . then that registrar also has the
14          hardware, software, and infrastructure necessary to obtain the daily transfer log
            files from any registry operator.
15
16   Cowherd Decl., ¶ 13. OnlineNIC does not dispute the veracity of this statement, and the Court

17   finds by clear and convincing evidence that OnlineNIC violated the Receiver Order by failing to

18   produce the required documents to Verizon.  OnlineNIC will be sanctioned $5,000 for its

19   violation of the Receiver Order.

20          **12. Conclusion**

21          For its violations of the Modified Injunction and Receiver Order, OnlineNIC will be

22   sanctioned in the amount of $30,600.00.[8]

23   ────────────────

24          [8] Verizon once again has requested that recovery of its attorneys' fees–which apparently
     now run to over $600,000–be awarded as a sanction for OnlineNIC's misconduct.  Yet, while the
25   Court has found multiple grounds for sanctions, there is no dispute that OnlineNIC has complied
     to some extent with the Court's directives, and that the violations identified here, while
26   important, do not constitute the sum-total of OnlineNIC's efforts.  "[T]he permissible level of
     sanctions for misconduct in litigation . . . is . . . limited by notions of proportionality," *Ty Inc. v.*
27   *Softbelly's, Inc.*, 517 F.3d 494, 499 (7th Cir. 2008); *see also Zambrano v. City of Tustin*, 885
     F.2d 1473, 1480 (9th Cir. 1989), and to award sanctions anywhere within the numerical realm
28
                                                    12

1

## II. MOTION FOR RELIEF FROM JUDGMENT

2    **A.    Background**

3         Verizon filed its complaint in the instant action on June 6, 2008.  From that time until

4    December 2008, Verizon attempted unsuccessfully to serve OnlineNIC at least thirteen different

5    times and at five different locations.  *See* Steele Decl., Doc. No. 69, ¶ 2.  The majority of these

6    attempts are cataloged in the Court's order dated November 7, 2008, authorizing Verizon to

7    effect service through the California Secretary of State.  It is undisputed that on July 17, 2008,

8    OnlineNIC's President, Rex Liu, personally signed for an Express Mail package containing the

9    summons and complaint.  However, neither Mr. Liu nor any other representative of OnlineNIC

10   contacted Verizon's attorneys or the Court until December 11, 2008, when Mr. Liu apparently

11   telephoned David Steele, counsel for Verizon.

12        At around ten o'clock AM on December 11, 2008, Verizon filed a motion for entry of

13   default against OnlineNIC.  The clerk of the court entered the requested default on December 12,

14   2008.  On the same day, Mr. Liu telephoned Mr. Steele and left a message.  At around 5:58 PM,

15   Mr. Liu answered a telephone call from Mr. Steele.  *See* Liu Decl., ¶ 12 & Ex. D.  Mr. Liu recalls

16   informing Mr. Steele that he had just become aware of the action and needed time to retain

17   counsel.  Liu Decl., ¶ 12.  Mr. Liu also recalls "stat[ing] that the allegations against OnlineNIC

18   made by Verizon in its complaint were false."  Liu Reply Decl., ¶ 1.  Mr. Steele recalls that he

19   and Mr. Liu discussed the possibility of settling the case, but that Mr. Liu informed him that

20   OnlineNIC would not pay any substantial sum of money in settlement, and, in fact, likely would

21   ignore the case even if an adverse judgment were entered.  Steele Decl., ¶ 5.

22        On December 15, 2008, at 2:28 PM, Verizon filed a motion for default judgment against

23   OnlineNIC.  At 8:56 PM, Mr. Liu sent Verizon's counsel an email setting forth a number of

24   reasons why OnlineNIC believed it had not committed the violations alleged in the complaint.

25   However, OnlineNIC still did not appear before the Court.  The motion for default judgment was

26

27   _____

28   urged by Verizon would be highly disproportionate to the harm that Verizon has suffered as a
     result of OnlineNIC's contemptuous conduct.

13

heard on December 19, 2008, and the Court granted the motion on the same day.  After retaining

counsel, OnlineNIC filed the instant motion for relief from judgment on February 24, 2009.

**B.**   **Legal standard for relief from judgment pursuant to Rule 60**

A court may grant relief from a default judgment pursuant to Federal Rule of Civil

Procedure 60(b)(1) in cases of "mistake, inadvertence, surprise, or excusable neglect . . . . "  The

standard for determing whether there has been excusable neglect was set forth in *Falk v. Allen*,

739 F.2d 461, 463 (9th Cir. 1984):

> (1) whether Defendant engaged in culpable conduct that led to the default;
> (2) whether Defendant had a meritorious defense; or
> (3) whether reopening the default judgment would prejudice Plaintiff.

(the "*Falk* factors").  A party's conduct may be considered culpable if that party "received actual

or constructive notice of the filing of the action and *intentionally* failed to answer."  *TCI Group*

*Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis in original).  However,

> [n]eglectful failure to answer as to which the defendant offers a credible, good
> faith explanation negating any intention to take advantage of the opposing party,
> interfere with judicial decisionmaking, or otherwise manipulate the legal process
> is not "intentional" under our default cases, and is therefore not
> necessarily–although it certainly may be, once the equitable factors are
> considered–culpable or inexcusable.

*TCI*, 244 F.3d at 698-99.  Ninth Circuit precedent establishes that the *Falk* factors are

disjunctive, meaning that if evidence of one factor is present, a court is under no obligation to

consider evidence with respect to the other factors.  *Franchise Holding II, LLC. v. Huntington*

*Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004); *Am. Ass'n of Naturopathic*

*Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000).[9]

---

[9] While the court in *E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*, 430 F. Supp. 2d 1064,
1085 (E.D. Cal. 2005) questioned the Ninth Circuit's express holdings in *Franchise Holding II*
and *Hayhurst* that the *Falk* factors are to be read disjunctively, *see E. & J. Gallo*, 430 F. Supp. at
1086-87, this Court is unpersuaded that those cases should not control.  The *E. & J. Gallo* court
noted the above-quoted statement in *TCI* that

> [n]eglectful failure to answer as to which the defendant offers a credible, good
> faith explanation . . . is not "intentional" under our default cases, and is therefore
> not necessarily–although it certainly may be, *once the equitable factors are
> considered*–culpable or inexcusable.

*Id*. at 1085-86 (quoting *TCI*, 244 F.3d at 698-99) (emphasis added).  The court focused on the

14

1    A default judgment also must be set aside as void for lack of personal jurisdiction if the

2 defendant has not received adequate service of process. *See* Fed. R. Civ. P. 60(b)(4); *see also*

3 *E.C. v. Internet Solutions for Business Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007); *E. & J. Gallo*,

4 430 F. Supp. 2d at 1085. Once a party has "appeared" for purposes of Rule 55's entry-of-default

5 provisions, "[t]he court must be satisfied that [the party] has received notice" of a motion for

6 default judgment. *D.B v. Bloom*, 896 F. Supp. 166, 170 (D.N.J. 1995).

7 **C.    Discussion**

8       **1. "Excusable neglect": the *Falk* factors**

9              **a. Culpable conduct**

10    To excuse the five-month delay between the time OnlineNIC received actual notice of

11 this litigation and the time it finally appeared, Mr. Liu claims that (1) he forgot about and

12 therefore failed to open the package containing the complaint and summons, and (2) he and

13 OnlineNIC have a poor understanding of the U.S. legal system. Verizon counters, in essence,

14 that "Mr. Liu and OnlineNIC sat on their hands and waited to see how Verizon's service,

15 litigation, and collection efforts were proceeding" before deciding to appear in the litigation.

16 Opp. to Mot. for Relief, at 1:14-16. In determining whether OnlineNIC's justifications constitute

17

18 ───────────────

19 italicized portion of the quoted language, reading it as a suggestion that equitable balancing of
   each *Falk* factor was required, and suggesting that the Ninth Circuit's subsequent *en banc*

20 decision in *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004) confirmed the necessity of such
   an "equitable" approach.

21    Aside from the fact that it has not overruled the clear holdings of *Franchise Holding II* or

22 *Hayhurst* with respect to the disjunctive nature of the *Falk* factors, the court of appeals has
   continued, after *Pincay*, to follow the approach of *Franchise Holding II* and *Hayhurst*. *See, e.g.*,

23 *Coomes v. Shamji*, 260 Fed. Appx. 988, 989 (9th Cir. 2007) ("In light of Shamji's culpable
   conduct, it is not necessary to consider whether he had any meritorious defenses." (citing

24 *Franchise Holding II*, 375 F.3d at 926)); *Mood v. Global Diamond Resources, Inc.*, 125 Fed.
   Appx. 113, 114 (9th Cir. 2005) ("[T]he '[good cause] factors are disjunctive,' and, therefore, 'the

25 district court was free to deny the motion 'if any of the three factors was true.''") (quoting
   *Franchise Holding II*, 375 F.3d at 926)); *see also* Fed. R. App. P. 32.1 (barring prohibitions or

26 restrictions on the citation of federal judicial opinions issued on or after January 1, 2007); 9th

27 Cir. R. 36-6(b) (implementing Fed. R. App. P. 32.1); 9th Cir. R. 36-6(c)(ii) (permitting citation
   to unpublished decisions issued before January 1, 2007 "for factual purposes"). Accordingly,

28 this Court will read the *Falk* factors disjunctively.

Case No. C 08-2832 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR CONTEMPT SANCTIONS AND FOR
RELIEF FROM JUDGMENT
(JFLC3)

1    "credible, good faith explanation[s] negating any intention to take advantage of the opposing

2    party, interfere with judicial decisionmaking, or otherwise manipulate the legal process," the

3    Court must consider both the circumstances surrounding OnlineNIC's default and the credibility

4    of Mr. Liu, who is OnlineNIC's sole non-legal advocate in the instant proceedings.

5         The circumstances surrounding OnlineNIC's default do not suggest the existence of a

6    credible, good-faith excuse for OnlineNIC's failure to respond.  Principally, OnlineNIC provided

7    a series of inconsistent, confusing, and, in every case, false addresses, both for ordinary business

8    communications and service of process.  This included maintaining false information with the

9    California Secretary of State, in violation of California law.  *See* Cal. Corp. Code § 1502(e)

10   (requiring corporations to file with Secretary of State a current statement of address whenever

11   address is changed).  Specifically, at the time the complaint was filed, and over the course of

12   Verizon's multiple attempts at service, the records lodged by OnlineNIC with the Secretary of

13   State indicated that OnlineNIC's principal business offices and its agent for service of process

14   were located at 2315 26th Ave., San Francisco, California (the "San Francisco Address").  Yet,

15   as OnlineNIC admits, *see* Liu Reply Decl., Doc. No. 65, ¶ 3, the San Francisco address was not

16   valid for either purpose as of June 2008 because neither OnlineNIC nor Mr. Liu conducted

17   business or resided there.  OnlineNIC has provided no credible, good-faith justification for its

18   abject failure to provide for effective service of process, and that failure alone constitutes

19   culpable conduct.  *See, e.g.*, *Employee Painters' Trust v. Ethan Enterprises, Inc.*, 480 F.3d 993,

20   1000 (9th Cir. 2007) ("[A] deliberate failure [to respond, sufficient to justify denial of relief from

21   a default judgment,] can be found where, as here, defendants provide the opposing party with an

22   incorrect address, thereby precluding normal service of process."); *Pena v. Seguros La*

23   *Commercial*, 770 F.2d 811, 815 (9th Cir. 1985) (finding sufficient grounds for denial of relief

24   from default judgment where the defendant "provided both Pena and the Arizona Department of

25   Insurance with the incorrect address, [which was the defendant's] own fault").

26        Further, OnlineNIC listed 3435 Wilshire Boulevard, Los Angeles, California (the "Los

27   Angeles Address") as its principal business address.  Chu Decl., Ex. B.  Yet OnlineNIC did not

28   conduct any business or maintain an office at the Los Angeles Address.  Chu Dec., ¶¶ 5-6.  By

16

1    identifying the Los Angeles Address in its corporate filings, OnlineNIC is similarly culpable.

2    *Pena*, 770 F.2d at 815.  Finally, OnlineNIC is culpable because its website listed 351

3    Embarcadero E., Oakland, California (the "Oakland Address") as its mailing address.  *See* Chu

4    Decl., ¶ 8 & Ex. C.  Yet, when Verizon attempted in-person service on OnlineNIC at the Oakland

5    Address in June 2008, an employee at the business located there informed Verizon's process

6    server that OnlineNIC did not conduct business at that address.  Smith Decl., ¶ 7.  Indeed, even

7    though OnlineNIC changed its corporate records in November 2008 to identify the Oakland

8    Address as both its business address and the location of its agent for service of process, Steele

9    Decl., ¶ 3 & Ex. A, OnlineNIC admits that the Oakland Address also was unsuitable for service.

10   Liu Decl., ¶ 10.  On balance, the most reasonable inference to be drawn from this state of affairs

11   is that OnlineNIC was consciously engaged in a shell game with Verizon and other potential

12   litigants.

13           With respect to the credibility of Mr. Liu, the Court carefully has reviewed Mr. Liu's

14   declarations, and has reflected on its observations in presiding over this case during the

15   approximately seven months since Mr. Liu and OnlineNIC began to participate in the instant

16   litigation.  On the basis of that review and reflection, the Court finds that Mr. Liu simply is not a

17   credible declarant, and that his justifications and excuses are not entitled to substantial weight.

18   Not only has Mr. Liu on multiple occasions filed declarations that contain demonstrably false

19   statements, but the timing of these statements suggests anything but good faith.  With respect to

20   whether he received actual notice of this lawsuit, Mr. Liu first claimed that he relied on his

21   daughter to give him OnlineNIC's mail and that he never received notice of the suit.  Liu Decl.,¶

22   3.  However, after Verizon submitted evidence that Mr. Liu personally signed for the Express

23   Mail package containing the summons and complaint, Mr. Liu admitted that he received those

24   documents in July 2008.  Liu Reply Decl., Doc. 65, ¶ 1.[10]  Similarly, Mr. Liu made false

25

26           [10] Even if Mr. Liu's declaration were accurate, the fact remains that OnlineNIC still had
27   not responded to the allegations of Verizon's complaint at the time it filed the instant motion for
     relief from judgment.  Rather, for several months after appearing in the litigation, OnlineNIC did
28   nothing while Verizon incurred litigation costs associated with its motions for default judgment,

Case No. C 08-2832 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR CONTEMPT SANCTIONS AND FOR
RELIEF FROM JUDGMENT
(JFLC3)

1    representations with respect to OnlineNIC's registered addresses.  Mr. Liu declared, under

2    penalty of perjury, that "OnlineNIC's registered address for purposes of service of process during

3    the relevant times in this action was 351 Embarcadero Avenue, Oakland, CA 94606."  Liu Dec.,

4    ¶ 3.  But OnlineNIC did not update its registered address or its registered process agent's address

5    until November 2008, around the time when the Court authorized Verizon to effect service

6    through the Secretary of State.  Steele Decl., ¶ 3, Ex. A.  Mr. Liu's statement thus was false and

7    misleading.

8         Mr. Liu also has made demonstrably false representations in recent sworn declarations

9    filed with the Court.  For example, when Verizon claimed that OnlineNIC violated the Modified

10   Injunction by transferring twenty-nine domain names that never were sent to Verizon for review,

11   s*ee* Steele Decl., ¶ 51 & Ex. 48, Mr. Liu claimed initially that OnlineNIC had sent NACK

12   commands with respect to all of the subject transfer requests, *see* Liu Decl., ¶ 3, but he later

13   admitted that OnlineNIC in fact had transferred the domain names at issue.  Yet another example

14   of Mr. Liu's misrepresentations concerns Verizon's claim that OnlineNIC had failed to provide

15   "the daily transfer logs from any registry operator for each domain name transferred from

16   OnlineNIC to any other registrar from August 1, 2008 to March 14, 2009."  Receiver Order, at

17   1:24-2:2.  Verizon claimed, and OnlineNIC admitted, that the daily transfer logs from the registry

18   operators of .org, .biz, .info, .us and .mobi domain names had not been transferred.  *See supra*

19   Section I.C.11.  Irrespective of whether, as OnlineNIC claims, Verizon was required to "notify"

20   OnlineNIC that it expected transfer logs from these domains–i.e., that it expected full compliance

21   with the injunction–Mr. Liu's excuse–that OnlineNIC lacked "the hardware, software and other

22   infrastructure necessary to obtain the native transfer logs from registry operators other than

23

24

25   _____

26   for an asset freeze, and to appoint a receiver, and with its efforts to enforce the judgment.
     OnlineNIC's failure to act until Verizon began collecting on the default judgment is further
27   evidence of culpable conduct.  *See Franchise Holding II*, 375 F.3d at 928 (finding defendant
     culpable where it "made no effort to preserve its interests in the district court until [the plaintiff]
28   began collecting on the default judgment").

                                                    18

VeriSign," which handles only .com and .net domain names, Liu Dec., ¶2–clearly was false.  As noted above, the Cowherd declaration states explicitly that

> [i]f a registrar has the hardware, software, and infrastructure necessary to obtain the daily transfer log files from VeriSign, . . . then that registrar also has the hardware, software, and infrastructure necessary to obtain the daily transfer log files from any registry operator.

Cowherd Decl., ¶ 13.  OnlineNIC has no response to this observation, and its transparently false representation in an area of its core competence is inexcusable.  In sum, through his recent conduct Mr. Liu has eroded severely what remaining credibility he had with the Court, and in view of all the circumstances, his explanation of OnlineNIC's failure to respond to actual notice of this lawsuit cannot be considered credible or as having been made in good faith.

Similarly unpersuasive is Mr. Liu's claim that his and OnlineNIC's poor understanding of the U.S. legal system should excuse OnlineNIC's failures.  As an initial matter, OnlineNIC promotes itself as "a professional company . . . [w]ith extensive technical and financial resources and a fully experienced staff."  Steele Decl., ¶ 8, Ex. E.  OnlineNIC also is one of the fifteen most active registrars at ICANN.  Steele Dec., ¶ 9.  More importantly, OnlineNIC incorporated itself in California, has drafted numerous contracts enforceable under California law and, and maintains a legal disclaimer on its website.  Steele Decl., ¶¶ 10-12 & Exs. F-H.  There can be little doubt that OnlineNIC consulted with California lawyers and thereby became at least somewhat familiar with the legal obligations of California corporations.  *See Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1449 (9th Cir. 1991) (observing that foreign defendant revealed familiarity with U.S. legal system by retaining local counsel to protect its interests in other matters).  "[I]t is fair to expect that individuals who have . . . consulted with a lawyer appreciate the consequences of failing to answer and do so only if they see some advantage to themselves."  *TCI*, 244 F.3d at 699 n.6.

For all of the foregoing reasons, the Court concludes that there is no credible, good-faith explanation for OnlineNIC's failure to appear for five months after receiving actual notice of this lawsuit.  Accordingly, OnlineNIC has engaged in culpable conduct that weighs strongly in favor of denying relief from the judgment entered on December 19, 2008.  While this conclusion alone

19

1   warrants denial of OnlineNIC's motion for relief from judgment, *Franchise Holding II*, 375 F.3d

2   at 926; *Hayhurst*, 227 F.3d at 1108, the Court nonetheless will offer a brief discussion of the

3   remaining two *Falk* factors as they apply to the case at bar.

4             **b. Meritorious defense**

5          Even assuming that the default at issue did not result from OnlineNIC's culpable conduct,

6   it does not appear that OnlineNIC has a meritorious defense.  The facts provided by Verizon to

7   the Court in its motion for default judgment demonstrated that OnlineNIC was both the registrant

8   and the registrar of the 663 domain names that are identical or confusingly similar to Verizon's

9   marks.  As such, OnlineNIC does not qualify for protection under the Anticybersquatting

10  Consumer Protection Act's ("ACPA") safe harbor provision, which exempts a domain name

11  registrar from liability resulting from its registration of domain names for others where the

12  registrar is acting in a purely passive capacity.  15 U.S.C. § 1114(2)(D)(iii).

13         In its motion to set aside the default, OnlineNIC attempts to show that it is not liable

14  under the ACPA because it is the registrar, but not the registrant, of one of the 663 domain names

15  that are confusingly similar to the Verizon marks.  Specifically, OnlineNIC contends that the

16  registrant of verizondialup.com is Yunfeng Xie.  Liu Decl., at 5, ¶ 8a & Ex. C.  This contention,

17  however, is inconsistent with the public "whois" data for verizondialup.com, which identifies the

18  registrant as follows:

19         junlong zheng lixian@35.cn +86.59211111
       OnlineNIC
20         8F, Huiyuan Bild, 276 Jiahe Rd.
       Xiamen, Fujian, CN 361012

21

22  Bradley Decl., Ex. B, at 38.  While OnlineNIC argues that it "never made or confirmed th[e]

23  statement" that "junglong zheng is OnlineNIC," Reply ISO Mot. for Relief, at 6:17-19 (citing Liu

24  Reply Decl., ¶ 2), it also does not deny that alleged fact.  In the context of a motion to set aside a

25  judgment, the burden is on the moving party. *TCI*, 244 F.3d at 697.  Thus, OnlineNIC's failure

26  to deny alleged facts constitutes an admission of those facts for the limited purpose of

27  determining whether OnlineNIC has made an adequate showing under any of the *Falk* factors.

28  *Cf. Franchise Holding II*, 375 F.3d at 926 (noting that moving party "b[ears] the burden of

1   showing that any of [the *Falk]* factors favor[] setting aside the default").  Accordingly, the Court

2   concludes that OnlineNIC does not have a meritorious defense.

3          **c. Prejudice to Verizon**

4          The Court has considered each of Verizon's arguments with respect to the likelihood that

5   it will suffer prejudice if the motion for relief from judgment is granted.  None of these

6   arguments is particularly convincing.  For example, while Verizon claims that it will lose the

7   ability to enforce its judgment against OnlineNIC before Yahoo!, Inc., which filed an action

8   against OnlineNIC some six months after Verizon filed the instant action, both cases are before

9   this Court, and the Court can ensure that Verizon's judgment is given priority if that indeed is the

10  proper course.  In addition, while Verizon claims to have suffered prejudice in the form of

11  attorneys' fees expended both on attempted service of OnlineNIC and on the subsequent default

12  proceedings, that prejudice could be cured by an order requiring OnlineNIC to pay Verizon its

13  reasonable attorneys' fees as a condition of setting aside the default judgment.

14         Nonetheless, even if the Court were required to balance the *Falk* factors, OnlineNIC's

15  conduct in connection with the default was sufficiently culpable, and its defenses to liability were

16  sufficiently lacking in merit, that OnlineNIC still would not be entitled to relief from the

17  December 2008 judgment.  *See supra*.

18         **2. Adequacy of notice of default judgment hearing**

19         OnlineNIC also argues that the default judgment must be set aside because it did not

20  receive actual notice of Verizon's motion for default judgment, which was filed on December 15,

21  2008 and heard on December 19, 2008.  OnlineNIC's argument is incorrect because (1)

22  OnlineNIC had not "appeared" in the case, meaning that actual notice was not required, and (2)

23  even if OnlineNIC had appeared, Verizon provided proper notice of the hearing.

24         Rule 55(b)(1), which provides for entry of default by the clerk of the court, applies only

25  to parties who have not appeared in an action.  *See Direct Mail Specialists, Inc. v. Eclat*

26  *Computerized Techs., Inc.*, 840 F.2d 685, 689 (9th Cir. 1988).  Thus, if a party has appeared, "the

27  clerk's entry of default is void ab initio."  *Id*.  An appearance typically involves "some

28  presentation or submission to the court."  *Id*.  However, "because judgments by default are

21

1  disfavored, a court usually will try to find that there has been an appearance by defendant." *Id*.

2  (citation and internal quotation marks omitted). Accordingly, where a clear and unambiguous

3  communication to the court is lacking, a defendant nonetheless may be found to have appeared

4  "where it evidenced an intent to defend itself." *Franchise Holding II*, 375 F.3d at 928.

5     OnlineNIC claims that it "appeared" in the litigation by way of the December 12, 2008

6  telephone call with Mr. Steele. Of course, because OnlineNIC did not make its "appearance"

7  known to the Court, the relevant question is whether OnlineNIC, in the course of the telephone

8  conversation, "evidenced an intent to defend itself." *Id.*; *cf. Wilson v. Moore & Assocs., Inc.*, 564

9  F.2d 366, 367 (9th Cir. 1977) (finding that defendant had appeared where it sent a letter directly

10  to the district court). As noted above, during the December 12 telephone conversation, Mr. Liu

11  discussed with Mr. Steele the possibility of settling the case. However, according to Mr. Steele,

12  Mr. Liu represented that OnlineNIC would not pay any substantial sum of money to settle the

13  case and, in fact, likely would ignore it. Steele Decl., ¶ 5. Viewed in the light most favorable to

14  OnlineNIC, Mr. Liu at most expressed an intent to hire an attorney. *See* Liu Decl., ¶ 12. In

15  addition, by Mr. Steele's account of the conversation, Mr. Liu's comments certainly would have

16  given the impression that OnlineNIC did not intend to defend the suit. *See* Steele Decl., ¶ 5.

17  Indeed, it appeared that OnlineNIC was interested solely in discussing a possible settlement,

18  which does not constitute evidence of an "intent do defend." *See State of New York v. Green*,

19  420 F.3d 99, 106-07 (2nd Cir. 2005) (finding that defendant had not appeared because it had not

20  asserted any defense or identified any weakness in the substance of the lawsuit, but merely had

21  discussed its willingness to settle).[11] In sum, OnlineNIC did not "appear," and thus may not

22  complain of the default entered against it.[12]

23  _____

24     [11] To the extent that Mr. Liu's and Mr. Steele's accounts of the conversation differ, the
      Court will credit Mr. Steele's account given the unfavorable credibility determination that the

25  Court has reached with respect to Mr. Liu. *See supra* Section III.C.1.a.

26     [12] OnlineNIC also claims that it made an appearance, for purposes of Rule 55, when Mr.
      Liu sent an email to Mr. Steele on December 15. Even assuming that the contents of the email

27  constituted an "appearance," the email was sent hours after Verizon had filed its notice of default

28  judgment. Verizon was not required to give notice of earlier-filed documents.

Case No. C 08-2832 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR CONTEMPT SANCTIONS AND FOR
RELIEF FROM JUDGMENT
(JFLC3)

1    Even if OnlineNIC were deemed to have appeared, the record reflects that OnlineNIC

2    received timely and proper–if not entirely generous–notification of the default judgment hearing.

3    On December 15, 2008, upon filing its Motion for Default Judgment, Verizon served OnlineNIC

4    (1) at the Oakland Address–which OnlineNIC still insists "conclusively . . . was a valid address

5    for service . . . ," Reply, at 2:4-6–by federal express and first class mail, (2) at the San Francisco

6    Address by first class mail, and (3) by email at cs-os@onlinenic.com.  Verizon thus did not

7    "suppress" notice to OnlineNIC or conceal "its intent to pursue litigation for fear of stimulating

8    the defendant into defending itself."  *Franchise Holding II*, 375 F.3d at 928.

9                                            **III. ORDER**

10    For the foregoing reasons, Verizon's motion for contempt sanctions will be granted in the

11    amount of $30,600.00.  OnlineNIC's motion for relief from the $33.15 million default judgment

12    entered against it on December 19, 2008 will be denied.  However, in the interest of justice,

13    Verizon will be required to prove up its damages (including the proper per-violation amount of

14    statutory damages) in the context of the adversarial proceeding that has arisen since OnlineNIC

15    appeared in the litigation.[13]  The Court expressly reserves jurisdiction to modify the amount of

16    the judgment according to proof.  Counsel shall meet and confer and contact the Court's

17    administrative law clerk to arrange an appropriate hearing date.

18

19    **IT IS SO ORDERED**.

20

21    DATED: 7/27/09

22

23    JEREMY FOGEL
      United States District Judge

24

25

26    [13] The Court has "inherent power and . . . discretion" to impose various conditions in the

27    context of deciding whether to grant or deny relief from a default judgment.  *Powerserve Intern.,
      Inc. v. Lavi*, 239 F.3d 508, 515 (2d Cir. 2001); 10A Wright, Miller & Kane, *Federal Practice and*

28    *Procedure: Civil* 3d § 2700, at 170.

Case No. C 08-2832 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR CONTEMPT SANCTIONS AND FOR
RELIEF FROM JUDGMENT
(JFLC3)

1  This Order has been served upon the following persons:

2  David Jefferson Steele david.steele@cph.com, djslit@cph.com

3  Gary Scott Dukarich gsd@cph.com, kristen.geraci@cph.com

4  Howard Alan Kroll howard.kroll@cph.com, susan.lovelace@cph.com

5  Perry J. Narancic pnarancic@nk-pc.com

6  Sarah B. Deutsch sarah.b.deutsch@verizon.com

7  Scott R. Mosko scott.mosko@finnegan.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 08-2832 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR CONTEMPT SANCTIONS AND FOR
RELIEF FROM JUDGMENT
(JFLC3)